No. 25-10871

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

SECURITIES AND EXCHANGE COMMISSION,
*Plaintiff-Appellee,*

v.

TIMOTHY BARTON,
*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Texas
No. 3:22-cv-2118-X

# REPLY BRIEF OF APPELLANT

Timothy L. Barton
*Pro Se Appellant*
1846 E Rosemeade Pkwy,
#232 Carrollton, TX 75007
Tel: (214) 673-8714
Timothy.Barton@proton.me

# TABLE OF CONTENTS


INTRODUCTION ........ 5

ARGUMENT ........ 6

I. THIS COURT HAS JURISDICTION OVER THIS APPEAL. ........ 6

A. The Pre-Clearance Order Is Independently Reviewable Under § 1292(a)(1). ........ 6

B. The Third Receivership Order Is Reviewable Under § 1292(a)(2). ........ 9

C. At Minimum, § 1291 Provides Jurisdiction. ........ 10

II. THE PRE-CLEARANCE REQUIREMENT VIOLATES THE FIRST AMENDMENT. ........ 11

III. THE LAW OF THE CASE DOCTRINE DOES NOT BAR REVIEW OF APPELLANT'S SUBSTANTIVE CHALLENGES. ........ 15

A. Subject-Matter Jurisdiction Can Never Be Waived. ........ 15

B. The Manifest Injustice Exception Applies. ........ 16

C. Newly Raised Arguments Were Not Ripe Until the Third Receivership Order. ........ 17

IV. THE SEC FAILS TO DEFEND THE RECEIVERSHIP ON THE MERITS. ........ 19

A. The Value Destruction Is Unrebutted. ........ 19

B. The Evidentiary Foundation Remains Absent. ........ 20

C. The Post-Vacatur Evidence Problem Is Unaddressed. ........ 22

CONCLUSION ........ 23

# TABLE OF AUTHORITIES

## Cases

Art Midwest, Inc. v. Clapper, 805 F.3d 611 (5th Cir. 2015) .................. 18
Baum v. Blue Moon Ventures, LLC, 513 F.3d 181 (5th Cir. 2008) ........ 11
BE&K Constr. Co. v. NLRB, 536 U.S. 516 (2002) .................................. 15
California Motor Transport Co. v. Trucking Unlimited, 404 U.S. 508 (1972) ................................................................................................ 12
Carson v. Am. Brands, Inc., 450 U.S. 79 (1981) ....................................... 6
Complete Bus. Sols. Grp., Inc., 44 F.4th 1326 (11th Cir. 2022) ............... 9
Farguson v. MBank Houston, N.A., 808 F.2d 358 (5th Cir. 1986) ......... 14
Grupo Mexicano de Desarrollo v. Alliance Bond Fund, 527 U.S. 308 (1999) ................................................................................................ 21
In re Saffady, 524 F.3d 799 (6th Cir. 2008) ............................................... 7
Med. Ctr. Pharmacy v. Holder, 634 F.3d 830 (5th Cir. 2011) ................ 19
Middlesex County Ethics Comm. v. Garden State Bar Ass'n, 457 U.S. 423 (1982) ........................................................................................ 12
Near v. Minnesota, 283 U.S. 697 (1931) ................................................. 12
Netsphere, Inc. v. Baron, 703 F.3d 296 (5th Cir. 2012) ......................... 10
Roman Catholic Archdiocese v. Acevedo Feliciano, 140 S. Ct. 696 (2020) .................................................................................................... 23
SEC v. Barton, 135 F.4th 206 (5th Cir. 2025) (Barton II) ........................ 8
SEC v. Barton, 79 F.4th 573 (5th Cir. 2023) (Barton I) ............................ 8
SEC v. Forex Asset Mgmt. LLC, 242 F.3d 325 (5th Cir. 2001) ................ 8
Steel Co. v. Citizens for Better Env't, 523 U.S. 83 (1998) ...................... 16
United States v. Matthews, 312 F.3d 652 (5th Cir. 2002) ...................... 16
Warren v. Bergeron, 831 F.2d 101 (5th Cir. 1987) ................................... 7

## Statutes

28 U.S.C. § 1291 ...................................................................................... 10
28 U.S.C. § 1292(a)(1) ................................................................................ 6
28 U.S.C. § 1292(a)(2) ................................................................................ 6
28 U.S.C. § 1334(e)(1) .............................................................................. 16

## **<u>Other Authorities</u>**

Tex. Gov't Code § 81.011 .......................................................................... 12

## INTRODUCTION

The Commission's brief asks this Court to do three things: dismiss for lack of jurisdiction, defer to law of the case, and look away from the merits. Each request should be rejected. The Commission's jurisdictional argument depends on characterizing a *new* constitutional restriction—a prior restraint on First Amendment petition rights—as a routine administrative receivership order. Its law-of-the-case argument ignores that subject-matter jurisdiction cannot be waived and that the manifest injustice exception exists precisely for cases like this one. And its merits discussion avoids the central, undisputed fact: this receivership has destroyed over $300 million in value to address an alleged $26 million harm, while distributing $0 to any alleged victim.

The Commission also mischaracterizes Appellant's arguments as a "scattershot" of meritless claims. Appellee Br. 17. But the Commission never disputes the magnitude of value destruction, never explains how entities without bank accounts could receive fraudulent funds, and never addresses the Supreme Court's holding that nunc pro tunc ratification cannot resurrect vacated authority. These silences speak volumes.

# ARGUMENT

## I. THIS COURT HAS JURISDICTION OVER THIS APPEAL.

The Commission devotes the first five pages of its brief to arguing that this Court lacks jurisdiction. Appellee Br. 8–12. The Commission is wrong for three independent reasons.

### A. The Pre-Clearance Order Is Independently Reviewable Under § 1292(a)(1).

The Commission argues that § 1292(a)(1) does not extend to receivership-related orders because Congress enacted the separate § 1292(a)(2) to govern receivership appeals. Appellee Br. 9–10. But this argument depends on treating the pre-clearance requirement as a receivership order. It is not. The pre-clearance requirement is a *freestanding injunction* that restrains Appellant's conduct outside the receivership context—specifically, his right to file complaints with the State Bar of Texas, an independent regulatory body that has nothing to do with receivership administration.

The distinction between receivership orders and independent injunctions is well established. In *Carson v. American Brands, Inc.*, 450 U.S. 79, 84 (1981), the Supreme Court held that § 1292(a)(1) provides

jurisdiction over interlocutory orders that have the "practical effect" of granting or denying injunctive relief, even when the order is not formally styled as an injunction. The pre-clearance requirement has precisely this effect: it enjoins Appellant from exercising his First Amendment right to petition a government agency without first obtaining judicial approval. That is an injunction by any definition.

The Commission's reliance on *Warren v. Bergeron*, 831 F.2d 101, 103 (5th Cir. 1987), and *In re Saffady*, 524 F.3d 799, 804 (6th Cir. 2008), is misplaced because those cases involved orders that were integral to receivership administration—the appointment, scope, and operation of the receivership itself. The pre-clearance requirement, by contrast, regulates Appellant's access to an external tribunal. It would apply with equal force whether or not a receivership existed. Its purpose is not to manage receivership assets or operations but to restrict Appellant's speech and petition rights.

Indeed, the Commission's own characterization of the pre-clearance requirement confirms its injunctive nature. The Commission describes it as "tailored to protect the courts and innocent parties, while preserving

the legitimate rights of litigants." Appellee Br. 13. That is the language of injunctive relief, not receivership administration.

Moreover, the Commission concedes that this Court reviewed the receivership order under § 1292(a)(2) in *Barton II*. Appellee Br. 11. If the original receivership order was reviewable, then an order that adds an entirely new type of restriction—one implicating constitutional rights rather than asset management—must also be reviewable as a third receivership order, whether under § 1292(a)(1) as an independent injunction or under § 1292(a)(2) as a material modification to the receivership. This Court has recognized that orders directing the disposition of receivership property and rights are immediately appealable precisely because, once effected, they cannot be undone. *See SEC v. Forex Asset Mgmt. LLC*, 242 F.3d 325, 328–29 (5th Cir. 2001) (holding receivership orders immediately appealable where assets "will be distributed, and likely unrecoverable, long before the action brought by the SEC is subject to appellate review"). The same logic applies here: once Appellant's First Amendment rights are chilled by a pre-clearance regime, the harm cannot be retroactively remedied after final judgment.

### B. The Third Receivership Order Is Reviewable Under § 1292(a)(2).

Even if the pre-clearance requirement is characterized as part of the third receivership order, § 1292(a)(2) provides jurisdiction. The Commission argues that § 1292(a)(2) is limited to "orders appointing receivers or refusing to wind up receiverships." Appellee Br. 10–11. But this reading is too narrow. The statute covers interlocutory orders "appointing receivers, or refusing orders to wind up receiverships or to take steps to accomplish the purposes of such actions." 28 U.S.C. § 1292(a)(2). The phrase "to take steps to accomplish the purposes of such actions" is broad enough to encompass orders that materially alter the nature of the receivership.

The Commission cites *Complete Business Solutions*, 44 F.4th at 1331–33, for the proposition that "midstream" receivership orders are not subject to § 1292(a)(2) jurisdiction. But *Complete Business Solutions* involved an order expanding the scope of an existing receivership to include additional entities—a routine administrative modification. Adding a constitutional restriction on a defendant's First Amendment rights is categorically different. It transforms the receivership from an

asset-preservation mechanism into a vehicle for restricting protected speech.

The Commission also cites this Court's dismissal in No. 25-11044 (a fee-award appeal). Appellee Br. 11–12. But a fee award is a quintessential administrative order within the receivership. A prior restraint on bar grievances is not. The two are not comparable.

### C. At Minimum, § 1291 Provides Jurisdiction.

The Commission argues that the modified receivership order is not a "final decision" under § 1291. Appellee Br. 9. While the underlying enforcement action remains pending, the Third Receivership Order authorized irreversible liquidation and permanent disposition of property rights. As *Netsphere, Inc. v. Baron*, 703 F.3d 296, 304 (5th Cir. 2012), recognized, receivership orders that authorize liquidation and determine property rights are immediately appealable because the assets, once liquidated, cannot be restored. The fire sales have already occurred. The value has already been destroyed. There is merely anything left to preserve by waiting for final judgment.

At a minimum, this Court should exercise jurisdiction over the pre-clearance requirement, which presents a pure legal question of

constitutional law that will not benefit from further factual development in the district court.

## II. THE PRE-CLEARANCE REQUIREMENT VIOLATES THE FIRST AMENDMENT.

The Commission defends the pre-clearance requirement by analogizing it to a pre-filing injunction under *Baum v. Blue Moon Ventures, LLC*, 513 F.3d 181, 187 (5th Cir. 2008). Appellee Br. 12–13. This analogy fails for a fundamental reason:

The distinction matters. Pre-filing injunctions are justified by the court's inherent power to manage its own docket and protect parties from vexatious litigation. A court has no comparable inherent power to restrict complaints to an external regulatory agency. The State Bar has its own mechanisms for handling frivolous complaints, including dismissal by the Summary Disposition Panel—which is exactly what happened here. See Appellee Br. 4 n.2 (noting that the grievance was dismissed).

The pre-clearance requirement is also ultra vires because the district court has no jurisdiction or supervisory authority over the State Bar of Texas. The State Bar operates as an administrative arm of the

Texas Supreme Court under the State Bar Act, Tex. Gov't Code § 81.011, and its disciplinary proceedings are a state judicial function entitled to federal court deference.

The dismissal of the grievance by the State Bar demonstrates that the existing regulatory framework already provides the protection the district court sought to impose. Under strict scrutiny, the pre-clearance requirement fails because a less restrictive alternative—the bar's own screening process—already exists and is functioning. *See Near v. Minnesota*, 283 U.S. 697, 713–14 (1931) (prior restraints bear "a heavy presumption against constitutional validity").

The procedural history proves the point. Appellant filed a grievance with the State Bar. The Bar evaluated the complaint on its merits, found it sufficiently non-frivolous to advance to board review, and ultimately dismissed it through its established process. The system worked exactly as designed—without any need for district court intervention. That Judge Starr separately ruled on the propriety of the receiver's conduct before the Bar reached its own independent determination only underscores the danger: permitting a federal judge to prejudge the merits

of a bar complaint compromises the very independence that makes the grievance process a reliable safeguard.

If this order stands, it establishes a precedent by which any district court may interpose itself as a gatekeeper over state bar proceedings—impeding their impartiality, influencing their outcomes, and bootstrapping federal jurisdiction over a process that by design operates free of judicial interference. The district court has no authority over bar complaints, and no order of the court can manufacture such authority. The pre-clearance requirement must be vacated to preserve the independence and integrity of the state bar disciplinary process.

The Commission also argues that the pre-clearance requirement is "tailored" under *Farguson v. MBank Houston, N.A.*, 808 F.2d 358, 360 (5th Cir. 1986). Appellee Br. 13. But *Farguson* again involved restrictions on *court filings*, not external agency complaints. And the pre-clearance order here is not narrowly tailored at all—it applies to "any grievance or complaint with any state bar, or any such complaint as would require the Receiver or his counsel to expend the assets of the Receivership estate in defense." ROA.18996. That sweeping language covers any complaint to

any bar, regardless of merit, subject matter, or connection to the receivership.

The Commission observes that the district court found "no bad faith on the part of the Receiver and his counsel." Appellee Br. 13. But this finding undermines the need for the pre-clearance requirement, not supports it. If no bad faith exists, the bar's own screening process will dismiss complaints on the merits. The pre-clearance requirement is not protecting against meritless grievances—the bar already does that—it is preventing the filing of any grievance at all without judicial permission. That is a prior restraint.

The Commission's cost-of-defense rationale is similarly unavailing. The Commission argues that the pre-clearance requirement prevents "the receivership estate from being depleted for meritless grievances." Appellee Br. 5. But the right to petition the government is not conditioned on the respondent's defense costs. See *BE&K Constr. Co. v. NLRB*, 536 U.S. 516, 524–25 (2002) (the right to petition includes filing complaints with government agencies). If cost-of-defense were sufficient to restrict First Amendment petition rights, any well-funded party could silence complaints by arguing that responding is expensive.

## III. THE LAW OF THE CASE DOCTRINE DOES NOT BAR REVIEW OF APPELLANT'S SUBSTANTIVE CHALLENGES.

The Commission argues that Appellant's challenges to the receivership order are either barred by the law of the case doctrine or waived. Appellee Br. 13–17. Neither doctrine applies as broadly as the Commission contends.

### A. Subject-Matter Jurisdiction Can Never Be Waived.

The Commission lists Appellant's subject-matter jurisdiction argument (that the transactions were loans, not securities) as barred by law of the case because it was rejected in *Barton II*. Appellee Br. 14. But subject-matter jurisdiction "can never be forfeited or waived." *Steel Co. v. Citizens for Better Env't*, 523 U.S. 83, 94 (1998).

Similarly, Appellant's argument regarding 28 U.S.C. § 1334(e)(1)—that the district court violated exclusive bankruptcy jurisdiction—is a subject-matter jurisdiction challenge that cannot be waived. The Commission argues this issue was waived because it was not raised in *Barton II*. Appellee Br. 16. But the non-waivable nature of subject-matter

jurisdiction means it can be raised at any time, including for the first time on a subsequent appeal.

**B. The Manifest Injustice Exception Applies.**

The law of the case doctrine is subject to three recognized exceptions, including when "the earlier decision is clearly erroneous and would work a manifest injustice." *United States v. Matthews*, 312 F.3d 652, 657 (5th Cir. 2002). The Commission notes that Appellant "does not argue for any exception." Appellee Br. 15 n.6. Appellant argues for the manifest injustice exception here.

The facts that have developed since Barton II demonstrate manifest injustice. The receivership has now destroyed over $300 million in value—more than ten times the allegation value—while distributing $0 to any alleged victim. The receiver has collected over $3 million in fees. Properties worth tens of millions have been sold for pennies on the dollar. These results were not before the Court in Barton II. They represent precisely the type of "substantially different" evidence that warrants revisiting prior holdings.

Moreover, the application of the "received or benefited from" standard has now been fully revealed to lack any limiting principle. As

applied, it has been used to sweep in entities without bank accounts (which cannot receive funds through the financial system), entities that predate the loans in question, and entities with wholly independent financing. Whatever the standard meant in theory when Barton I articulated it, in practice it has become a vehicle for seizing everything Appellant has ever touched—precisely the overbreadth that Barton I sought to prevent.

### C. Newly Raised Arguments Were Not Ripe Until the Third Receivership Order.

The Commission argues that arguments not raised in *Barton II* are waived. Appellee Br. 16. But several of these arguments could not have been raised earlier because they arise from events that postdated *Barton II*.

The Commission cites *Art Midwest, Inc. v. Clapper*, 805 F.3d 611, 614 (5th Cir. 2015), for the proposition that arguments "could have been but [were] not raised on one appeal cannot be resurrected on a later appeal." Appellee Br. 16. But this rule applies only to arguments that *could have been* raised—meaning arguments that existed and were available to the appellant at the time of the prior appeal. It does not bar

arguments premised on facts that had not yet occurred, orders that had not yet been entered, or harms that had not yet materialized. An appellant cannot be faulted for failing to challenge a settlement that had not yet been approved, an administrative closure that had not yet been ordered, or a pattern of value destruction whose full dimensions had not yet been revealed. The *Art Midwest* rule prevents sandbagging—the deliberate withholding of available arguments for tactical advantage. It does not require clairvoyance. When an appellant raises arguments based on post-decision developments, he is not "resurrecting" previously available claims; he is presenting new claims arising from new facts. The waiver doctrine, like all procedural doctrines, must yield to basic fairness. See *Med. Ctr. Pharmacy v. Holder*, 634 F.3d 830, 834 (5th Cir. 2011) (noting the waiver doctrine "serves judicial economy"—not injustice). Applying the waiver bar here would create a perverse incentive: a district court could insulate its receivership orders from any future review simply by entering successive modified orders, knowing that the defendant would be barred from raising new challenges because he "should have" anticipated them during the prior appeal. That is not the law.

## IV. THE SEC FAILS TO DEFEND THE RECEIVERSHIP ON THE MERITS.

Even setting aside jurisdiction and procedural bars, the Commission's defense of the receivership on the merits is notable for what it does not address.

### A. The Value Destruction Is Unrebutted.

Appellant's opening brief documented that the receivership has destroyed over $300 million in value to address an alleged $26 million harm. Br. 68–72. The Commission's response is remarkable for its brevity and evasiveness. As to BM318—which Appellant valued at $55 million under a confirmed bankruptcy plan—the Commission says only that the district court found Appellant's proof of value "not credible" and that the asset "had a low probability" of recovery. Appellee Br. 21. But the Commission never disputes that BM318 settled for $175,000. It never explains how a property valued at $55 million under a confirmed plan could be worth only $175,000. It never addresses the 99.7% loss.

As to 2999 Turtle Creek—appraised at $72.5 million and settled for $2.5 million—the Commission offers only a citation to the district court's

approval of the settlement. Appellee Br. 26–27. Approval of a settlement does not make it wise. A 96.6% loss demands scrutiny, not deference.

The Commission's only substantive defense is that district courts have "broad powers and wide discretion" in equity receiverships. Appellee Br. 6. But discretion is not a license for destruction. When a receivership causes more harm than the alleged fraud it was designed to address, something has gone fundamentally wrong. The receivership was established to preserve assets for the benefit of alleged victims. It has instead destroyed those assets while enriching the receiver. That is not the exercise of discretion; it is its abuse. See *Grupo Mexicano de Desarrollo v. Alliance Bond Fund*, 527 U.S. 308, 322 (1999) (federal courts lack equitable power to preliminarily freeze—let alone liquidate—assets to satisfy unestablished claims).

**B. The Evidentiary Foundation Remains Absent.**

The Commission defends the tracing analysis by citing *Barton II*'s holding that "[t]he district court committed no abuse of discretion in its admission and assessment of the tracing evidence." Appellee Br. 22. But *Barton II*'s deferential review does not insulate the tracing from scrutiny when new facts reveal its foundational deficiencies.

First, the Commission never explains how entities without bank accounts can be included in a receivership premised on the receipt of fraudulent funds. An entity without a bank account cannot receive wire transfers, checks, or any funds through the financial system. The Commission's only response is that "an entity could benefit from investor funds without directly receiving them." Appellee Br. 23 n.9. But the standard is "received or benefited from assets traceable to Barton's alleged fraudulent activities." Traceability requires a financial trail. If there is no bank account, there is no trail to trace.

Second, the Commission never addresses the $17 million in JMJ Development revenue that was never disaggregated from any alleged tainted funds. The tracing analyses lumped legitimate revenue together with funds the SEC claims are tainted, without any effort to distinguish the two. Without disaggregation, the tracing is meaningless.

Third, the Commission claims that Appellant misquoted the district court regarding the SEC staff accountant's qualifications. Appellee Br. 23 n.10. Whether the specific quote came from the district court or Appellant's proposed findings, the underlying point stands: Carol Hahn is not an accountant, not a CPA, holds no forensic credentials, and was

never qualified as an expert under Rule 702. The Commission's tracing rests on the work of an unqualified witness.

### C. The Post-Vacatur Evidence Problem Is Unaddressed.

Appellant's opening brief argued that the Third Receivership Order rests substantially on evidence created by the receiver after his authority was vacated in *Barton I*. Br. 41–46. The Commission barely engages with this argument. It notes that the 90-day wind-down period permitted the receiver to continue operating. Appellee Br. 3. But the 90-day period was designed to allow an orderly transition—not to permit the receiver to build a new evidentiary record for his own reappointment.

The Commission never addresses the Supreme Court's holding in *Roman Catholic Archdiocese of San Juan v. Acevedo Feliciano*, 140 S. Ct. 696, 701 (2020), that nunc pro tunc orders "are not some Orwellian vehicle for revisionist history." The receiver's post-vacatur actions were not authorized by any valid order. They cannot be retroactively validated. Evidence created without lawful authority should not have been received, and the Third Receivership Order, to the extent it relies on such evidence, is infirm.

The circularity of the district court's approach warrants emphasis. The receiver's authority was vacated for lack of evidentiary support. The receiver then created evidence to support his reappointment. The district court relied on that evidence to reappoint him. This is precisely the kind of bootstrapping that *Netsphere, Inc. v. Baron*, 703 F.3d 296 (5th Cir. 2012), and *Acevedo Feliciano* prohibit. *Netsphere* established that a receiver's authority is bounded by the order that creates it—a receiver cannot act beyond the scope of his appointment, and actions taken without authority are void. 703 F.3d at 310. When this Court vacated the First Receivership Order, it extinguished the source of the receiver's authority. Every action the receiver took thereafter was ultra vires—beyond the scope of any valid appointment. The subsequent reappointment cannot retroactively validate those actions because the reappointment itself was procured through the fruits of the unauthorized conduct.

## CONCLUSION

For the foregoing reasons, Appellant respectfully requests that this Court:

1. Assert jurisdiction and vacate the pre-clearance requirement as an unconstitutional prior restraint on First Amendment petition rights;

2. Vacate the Third Receivership Order in its entirety and remand with instructions to terminate the receivership;

3. In the alternative, vacate the Third Receivership Order and remand for further proceedings consistent with this Court's opinion, including reassignment to a different district judge; and

4. Grant such other and further relief as this Court deems just and proper.

Respectfully submitted,

*/s/ Timothy L. Barton*

**Timothy L. Barton**
*Pro Se Appellant*
1846 E Rosemeade Pkwy, #232
Carrollton, TX 75007
Tel: (214) 673-8714
Timothy.Barton@proton.me

Date: March 2, 2026

## CERTIFICATE OF SERVICE

I hereby certify that on March 2, 2026, I electronically filed the foregoing Reply Brief with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/ Timothy L. Barton*
Timothy L. Barton

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because this brief contains 3,485 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f).

This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5)(A) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using 14-point Century Schoolbook font.

*/s/ Timothy L. Barton*
Timothy L. Barton