U.S. COURT OF APPEALS
RECEIVED
Jul 14, 2026
FIFTH CIRCUIT

**No. 25-10871**

# In the
# United States Court of Appeals for the Fifth Circuit

**SECURITIES AND EXCHANGE COMMISSION,**
*Plaintiff-Appellee,*

v.

**TIMOTHY L. BARTON,**
*Defendant-Appellant.*

On Appeal from the United States District Court
for the Northern District of Texas, Dallas Division
USDC No. 3:22-cv-02118-X (Hon. Brantley Starr)

**PETITION FOR REHEARING EN BANC**
Pursuant to Federal Rule of Appellate Procedure 40

**Timothy L. Barton**
*Pro Se Appellant*
1846 E Rosemeade Pkwy,
#232 Carrollton, TX 75007
Tel: (214) 673-8714
Timothy.Barton@proton.me

## CERTIFICATE OF INTERESTED PERSONS

NO. 25-10871

SECURITIES AND EXCHANGE COMMISSION,

Plaintiff-Appellee,

v.

TIMOTHY BARTON,

Defendant-Appellant

Pursuant to Fifth Circuit Rule 28.2.1, the undersigned pro se Appellant certifies that the persons and entities having an interest in the outcome of this case are the same as those identified in the Certificate of Interested Persons filed with Appellant's Brief in this appeal (Doc. No. 82). No additional persons or entities have an interest in the outcome of this petition. These representations are made so that the judges of this Court may evaluate possible disqualification or recusal.

/s/ *Timothy L. Barton*
Timothy L. Barton
Pro Se Appellant
Date: July 14, 2026

## STATEMENT REQUIRED BY FED. R. APP. P. 40(b)(2)

The undersigned expresses a belief, based on a reasoned and studied professional judgment, that the panel decision involves the following grounds warranting rehearing en banc:

1. Conflict with decisions of the Supreme Court. The panel decision conflicts with *Carson v. American Brands, Inc.*, 450 U.S. 79 (1981), and *Elrod v. Burns*, 427 U.S. 347 (1976), and full-court consideration is necessary to secure and maintain uniformity of the Court's decisions. The panel held that, even assuming the challenged order carries the practical effect of an injunction, no "serious, perhaps irreparable, consequence" was shown. That holding cannot be reconciled with the rule that the loss of First Amendment freedoms, "for even minimal periods of time, unquestionably constitutes irreparable injury."
2. Questions of exceptional importance. This proceeding involves questions of exceptional importance: (a) whether a federal district court, as an incident of supervising an equity receivership, may impose a prior restraint requiring its advance leave before a litigant files a grievance or complaint with a state bar—an exercise of the First Amendment right to petition; and (b) whether such a court has jurisdiction to screen, condition, and bar the presentation of attorney-discipline grievances that lie within the exclusive authority of the State's highest court and its disciplinary system.

/s/ Timothy L. Barton
Timothy L. Barton, Pro Se

# TABLE OF CONTENTS

**CERTIFICATE OF INTERESTED PERSONS** ........ i

**STATEMENT REQUIRED BY FED. R. APP. P. 40(b)(2)** ........ ii

**TABLE OF CONTENTS** ........ iii

**TABLE OF AUTHORITIES** ........ iv

**STATEMENT OF THE ISSUES ASSERTED TO MERIT EN BANC CONSIDERATION** ........ 1

**STATEMENT OF THE COURSE OF PROCEEDINGS AND DISPOSITION OF THE CASE** ........ 1

**STATEMENT OF THE FACTS** ........ 3

**INTRODUCTION** ........ 4

**ARGUMENT** ........ 5

- **I. The dismissal conflicts with *Carson* and *Elrod*: a prior restraint on petitioning is irreparable injury as a matter of law, and Section 1292(a)(1) supplied jurisdiction.** ........ 5
- **II. The petition presents questions of exceptional importance.** ........ 9
  - **A. Whether a federal court may impose a prior restraint on the filing of state-bar grievances.** ........ 9
  - **B. Whether a receivership court has jurisdiction over grievances committed to a separate sovereign's disciplinary authority.** ........ 11
  - **C. The "leave" framing masks a functional injunction and a recurring, unsettled question.** ........ 12

**CONCLUSION** ........ 14

**CERTIFICATE OF SERVICE** ........ 16

**CERTIFICATE OF COMPLIANCE** ........ 16

**COPY OF THE PANEL OPINION** ........ 17

# TABLE OF AUTHORITIES

**Cases**

*Baum v. Blue Moon Ventures, LLC*, 513 F.3d 181, 189 (5th Cir. 2008)................10
*BE&K Construction Co. v. NLRB*, 536 U.S. 516, 531–37 (2002)..........................10
*California Motor Transport Co. v. Trucking Unlimited*, 404 U.S. 508, 510 (1972).7
*Carson v. American Brands, Inc.*, 450 U.S. 79 (1981)................................. passim
*Digital Media Solutions, LLC v. South University of Ohio, LLC*, 59 F.4th 772, 774 (6th Cir. 2023)....................................................................................9
*Elrod v. Burns*, 427 U.S. 347 (1976) ........................................................ ii, 1, 4, 6
*Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 434–35 (1982)....................................................................................11
*Near v. Minnesota*, 283 U.S. 697, 713–14 (1931).................................................9
*Warren v. Bergeron*, 831 F.2d 101, 103 (5th Cir. 1987)........................................8

**Statutes**

28 U.S.C. § 1292(a)(1)........................................................................... passim
28 U.S.C. § 1292(a)(2)............................................................................ 2, 8, 9

**Constitutional Provisions**

U.S. Const. amend. I ........................................................................ 9, 11, 14

**Federal Rules of Appellate Procedure**

Fed. R. App. P. 32(a)(5)–(6).......................................................................16
Fed. R. App. P. 32(f)..................................................................................16
Fed. R. App. P. 38.................................................................................2, 14
Fed. R. App. P. 40(b)(2) ................................................................................ ii
Fed. R. App. P. 40(d)(3) ...............................................................................16

**Federal Rules of Civil Procedure**

Fed. R. Civ. P. 66 ......................................................................................8, 9

**Fifth Circuit Rules**

5th Cir. R. 28.2.1.......................................................................................... i
5th Cir. R. 40.1.1.......................................................................................17
5th Cir. R. 40.2.2.10...................................................................................17
5th Cir. R. 40.2.2.4.......................................................................................1
5th Cir. R. 40.2.2.5.......................................................................................1
5th Cir. R. 40.2.2.6.......................................................................................3

## STATEMENT OF THE ISSUES ASSERTED TO MERIT EN BANC CONSIDERATION

Pursuant to 5th Cir. R. 40.2.2.4, Appellant states the following issues as meriting en banc consideration:

1. Whether an interlocutory order requiring a litigant to obtain the district court's advance leave before filing any grievance or complaint with any state bar is appealable under 28 U.S.C. § 1292(a)(1), where the panel assumed the order carries the practical effect of an injunction but held that no serious or irreparable consequence was shown—a holding that conflicts with *Carson v. American Brands, Inc.*, 450 U.S. 79 (1981), and *Elrod v. Burns*, 427 U.S. 347 (1976), under which the loss of First Amendment freedoms, for even minimal periods of time, constitutes irreparable injury as a matter of law.
2. Whether a federal district court, as an incident of supervising an equity receivership, may impose a prior restraint conditioning a citizen's exercise of the First Amendment right to petition a separate sovereign's attorney-disciplinary authority on the advance leave of the very court whose appointee would be the subject of the grievance.

## STATEMENT OF THE COURSE OF PROCEEDINGS AND DISPOSITION OF THE CASE

Pursuant to 5th Cir. R. 40.2.2.5, Appellant states the course of proceedings and disposition of the case as follows.

In 2022, the Securities and Exchange Commission brought this civil enforcement action against Mr. Barton in the United States District Court for the Northern District of Texas, No. 3:22-CV-2118-X (Hon. Brantley Starr), and the district court appointed a receiver over Mr. Barton and related entities. On June 23, 2025, the district court entered its Third Receivership Order, ROA.18979–19006, which directed that Mr. Barton "obtain leave of the [c]ourt before filing any grievance or complaint with any state bar, or any such complaint as would require the [r]eceiver or his counsel to expend the assets of the [r]eceivership estate in defense." ROA.18996. Mr. Barton timely filed a notice of appeal on July 22, 2025. ROA.19224–27. He invoked 28 U.S.C. § 1292(a)(1) as the basis of appellate jurisdiction.

On May 18, 2026, a panel of this Court dismissed the appeal for lack of jurisdiction, holding that the leave requirement is a non-appealable "case-management tool"; that, even assuming the order has the "practical effect of an injunction," no irreparable consequence had been shown; and that 28 U.S.C. § 1292(a)(2) is inapplicable. Op. 1–4. The panel separately directed Mr. Barton to show cause why sanctions should not issue under Federal Rule of Appellate Procedure 38. Op. 4–5. This timely petition for rehearing en banc followed on July 2, 2026.

## STATEMENT OF THE FACTS

Pursuant to 5th Cir. R. 40.2.2.6, Appellant states the facts as follows.

This appeal arises from the SEC's receivership over Mr. Barton and related entities. The court-appointed Receiver and the Receiver's counsel are officers of the district court, vested with authority over the persons and property within the estate's reach. Mr. Barton filed a grievance with a state bar concerning the conduct of receivership counsel. The Receiver responded by moving the district court to restrain further grievances. ROA.18977–18978.

On June 23, 2025, the district court entered its Third Receivership Order. ROA.18979–19006. That order modified the standing receivership regime to direct that Mr. Barton "obtain leave of the [c]ourt before filing any grievance or complaint with any state bar, or any such complaint as would require the [r]eceiver or his counsel to expend the assets of the [r]eceivership estate in defense." ROA.18996. The restraint extends beyond Mr. Barton to his counsel and all persons receiving notice of the order, and it is enforceable through the contempt power. If leave is denied, the grievance may not be filed at all. The requirement operates prospectively for the life of the receivership, and the leave decision rests with the same court that appointed, and continues to supervise, the attorneys whose conduct any grievance would concern.

# PETITION FOR REHEARING EN BANC

## INTRODUCTION

The panel dismissed this appeal for lack of jurisdiction, characterizing the order under review as a "midstream administrative" measure—a "case-management tool" rather than an injunction. Op. 1–3. But the order does something no housekeeping measure does: it forbids a litigant from petitioning a separate sovereign's disciplinary authority without first obtaining the permission of the very federal court whose appointee is the target of the complaint. The district court directed that Mr. Barton "obtain leave of the [c]ourt before filing any grievance or complaint with any state bar, or any such complaint as would require the [r]eceiver or his counsel to expend the assets of the [r]eceivership estate in defense." ROA.18996. If leave is denied, the grievance is never filed. That is not case management; it is a prior restraint on the First Amendment right to petition. The issue is not whether the grievance has merit; it is whether a federal court may require advance permission before a citizen may submit it to the State Bar.

Two features of the decision merit the full Court's attention. First, in holding that no "serious, perhaps irreparable, consequence" was shown under *Carson v. American Brands, Inc.*, 450 U.S. 79, 84 (1981), the panel overlooked that a restraint on First Amendment petitioning is irreparable injury as a matter of law. *Elrod v. Burns*, 427 U.S. 347, 373 (1976). Carson's second prong was therefore satisfied, and

28 U.S.C. § 1292(a)(1) supplied appellate jurisdiction. Second, the case presents two questions of exceptional importance—the constitutionality of a judicial prior restraint on bar grievances, and a federal receivership court's power over discipline reserved to a separate sovereign—that recur in this and other receiverships and that no decision of this Court has squarely resolved.

## ARGUMENT

### I. The dismissal conflicts with *Carson* and *Elrod*: a prior restraint on petitioning is irreparable injury as a matter of law, and Section 1292(a)(1) supplied jurisdiction.

Under *Carson v. American Brands, Inc.*, an interlocutory order that lacks the label of an injunction is nonetheless appealable under § 1292(a)(1) where it has the "practical effect" of one, carries "serious, perhaps irreparable, consequence[s]," and "can be effectually challenged only by immediate appeal." 450 U.S. at 83–84. The panel assumed the first element—practical effect—but found the second unmet, stating that Mr. Barton "identifies no irreparable consequence requiring immediate review." Op. 3.

That conclusion conflicts with controlling Supreme Court authority. The order restrains Mr. Barton's exercise of the First Amendment right to petition: it conditions the filing of a bar grievance on the district court's prior leave. The Supreme Court has held without qualification that "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v.*

*Burns*, 427 U.S. 347, 373 (1976). Because the challenged order works precisely such a loss—each day a meritorious grievance is withheld pending the court's permission is a day the right to petition is restrained—the "serious, perhaps irreparable, consequence" required by *Carson* exists as a matter of law. The panel's contrary holding cannot be squared with *Elrod*, and the conflict is outcome-determinative: it is the sole stated basis for rejecting § 1292(a)(1) jurisdiction even on the assumption that the order operates as an injunction. And the injury here is not merely abstract: each day leave is withheld, evidence of attorney misconduct grows stale, memories fade, and documents and witnesses become harder to secure, while the disciplinary authority's own limitations and investigative windows continue to run—concrete, time-sensitive harms that cannot be undone by an eventual appeal from final judgment. This decision appears to permit a federal district court to require its own advance permission before a citizen may petition a state attorney-disciplinary authority—and to do so where the official whose conduct would be reported is that court's own appointee.

The consequence is not confined to delay. By making the district court's advance permission a precondition to filing, the order works a second, independent harm: it brands the would-be complainant as a person whose access to the disciplinary authority must first be screened by a federal court—and screened by the very court that appointed, and continues to superintend, the attorney whose conduct

the grievance would report. If leave is denied, the grievance is not merely postponed; it is foreclosed, and the federal court, rather than the State's disciplinary authority, becomes the effective arbiter of whether a complaint of attorney misconduct may be heard at all. The stigma of mandatory pre-clearance, the chilling of protected reporting, and the outright foreclosure of any grievance the court declines to permit are each injuries that no appeal from a final judgment can repair. That is the "serious, perhaps irreparable, consequence" *Carson* requires.

The right at stake is core petitioning activity. "The right of access to the courts is indeed but one aspect of the right of petition," and the right to petition "extends to all departments of the Government," including administrative and licensing bodies. See *California Motor Transport Co. v. Trucking Unlimited*, 404 U.S. 508, 510 (1972). A state bar's grievance process is such a department—a governmental mechanism for petitioning for redress of attorney misconduct. An order that forbids a citizen from invoking it without prior judicial leave restrains protected petitioning at its threshold.

Independently, § 1292(a)(1) reaches orders "modifying … injunctions." 28 U.S.C. § 1292(a)(1). The district court did not write on a blank slate; it modified its standing receivership order to add the pre-clearance restraint. ROA.18996. An order that amends an existing equitable decree to impose a new, forward-looking restriction on a party's conduct is an order "modifying" an injunction, appealable as

of right. The panel did not address this text, resting instead on the proposition that receivership orders are governed by § 1292(a)(2). Op. 2–3 (citing *Warren v. Bergeron*, 831 F.2d 101, 103 (5th Cir. 1987)). But a restraint on petitioning a non-party tribunal is not an order administering the receivership res; it has nothing to do with marshalling or disposing of estate property, and § 1292(a)(2)'s focus on receivership administration does not displace § 1292(a)(1) review of a freestanding injunction housed within a receivership order.

That restraint is housed in a receivership order does not make it receivership administration. Case management of a receivership reaches the res—marshalling, preserving, and disposing of estate property. A state-bar grievance that Mr. Barton files in his individual capacity is none of those things: it is not property of the receivership estate, is not an act undertaken on behalf of any Receivership Entity, and has nothing to do with the possession, preservation, or disposition of estate assets. An order that conditions his personal exercise of the petition right on the court's advance leave therefore is not an order administering the res under § 1292(a)(2); it is a freestanding injunction reviewable under § 1292(a)(1). The panel's "case-management tool" characterization cannot bear that weight.

This limitation on the receivership power is not unique to this Circuit. Federal Rule of Civil Procedure 66 confines a receiver's administration of an estate to the "historical practice" of courts of equity, and the Sixth Circuit has recently held that

a receivership court may not invoke its equitable authority to grant relief that traditional equity practice does not permit. See *Digital Media Solutions, LLC v. South University of Ohio, LLC*, 59 F.4th 772, 774 (6th Cir. 2023). Although that decision is not binding on this Court, its reasoning is persuasive here, for it rests on the traditional equitable limits that Federal Rule of Civil Procedure 66 makes applicable in every circuit. A decree conditioning a citizen's access to a state disciplinary authority on the receivership court's advance leave is such relief: it does not marshal, preserve, or distribute estate property, and it has no analogue in the historical practice Rule 66 preserves. That an order falls outside the receivership-administration power addressed by § 1292(a)(2) does not immunize it from review; a freestanding restraint of this kind is an injunction reviewable under § 1292(a)(1).

## II. The petition presents questions of exceptional importance.

### A. Whether a federal court may impose a prior restraint on the filing of state-bar grievances.

The threshold question—whether a federal court may require its advance leave before a litigant files a bar grievance—is one of exceptional and recurring importance. A requirement of prior official permission to engage in protected expression is the classic prior restraint, which bears "a heavy presumption against its constitutional validity." See *Near v. Minnesota*, 283 U.S. 697, 713–14 (1931). The right to petition is not diminished because the petition alleges misconduct by a court-appointed receiver or his counsel; to the contrary, the First Amendment

protects even "unsuccessful but reasonably based suits," and the government bears a heavy burden before it may penalize—let alone preemptively bar—petitioning. See *BE&K Construction Co. v. NLRB*, 536 U.S. 516, 531–37 (2002).

Even accepting that a court may, in a proper case, impose a narrowly drawn pre-filing screen on a vexatious litigant, such a measure "must be tailored to protect the courts and innocent parties, while preserving the legitimate rights of litigants." See *Baum v. Blue Moon Ventures, LLC*, 513 F.3d 181, 189 (5th Cir. 2008). The order here is the opposite of tailored. It sweeps in every "grievance or complaint with any state bar," regardless of merit; it extends beyond Mr. Barton to his counsel and "all persons receiving notice"; and it routes the gatekeeping decision to the very court whose appointee would be the subject of the grievance. A regime in which the target's supervising court decides whether a disciplinary complaint may even be submitted chills the reporting of attorney misconduct and warrants the full Court's review.

The recurring importance of the question is heightened by the singular position the restrained conduct targets. A receiver and the receiver's counsel are officers of the court vested with extraordinary authority over the persons and property within the estate's reach, and that authority is ordinarily accompanied by layers of judicial protection—including quasi-judicial immunity and a bar on suit absent the appointing court's leave. This petition does not contend that a receiver's

counsel stands above the law or outside the rules that govern every member of the bar; the opposite is true. It is because such an officer is otherwise so heavily insulated that the state disciplinary process is often the single remaining avenue through which the professional conduct may be examined by an independent authority. An order conditioning access to that avenue on the permission of the very court that appointed the attorney does not treat the attorney like every other lawyer—it effectively forecloses the one form of accountability that ordinarily reaches every attorney alike. The First Amendment interest in preserving that avenue is at its zenith where the official whose conduct would be reported is the appointing court's own officer.

### B. Whether a receivership court has jurisdiction over grievances committed to a separate sovereign's disciplinary authority.

The second question is equally weighty: a federal court's receivership power does not extend to the State's attorney-discipline system. The regulation of the bar is committed to the State's highest court and the disciplinary apparatus it superintends, and the Supreme Court has recognized the State's "extremely important interest in maintaining and assuring the professional conduct of the attorneys it licenses," such that bar disciplinary proceedings are judicial proceedings implicating important state interests. See *Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 434–35 (1982). A bar grievance is a submission to that separate sovereign's process; it is not property of the receivership estate, and adjudicating or pre-empting it is no part of "tak[ing] steps to accomplish the

purposes" of the receivership. By forbidding the very submission of a grievance to the state disciplinary authority, the order reaches beyond the res the district court was empowered to administer and raises serious federalism and separation-of-powers concerns that transcend this case.

The intrusion is not hypothetical. The regulation of attorney conduct in Texas is committed to the State's highest court and the disciplinary system it superintends, and that system has long functioned as an independent mechanism—one that does not depend on, and has not historically required, the leave or supervision of a federal district court in order to receive and evaluate grievances. The order under review does more than decline to assist that process; it interposes the federal court as a mandatory gate through which a citizen must pass before the State's disciplinary authority may even receive his complaint. That is an assertion of control over a proceeding reserved to a separate sovereign, and it raises the prospect of incremental judicial encroachment on a domain the federal courts have not previously entered. Whether a federal receivership court may position itself as gatekeeper to a separate sovereign's disciplinary system is a question of exceptional importance that reaches well beyond Mr. Barton and warrants the full Court's review.

### C. The "leave" framing masks a functional injunction and a recurring, unsettled question.

The panel reasoned that the requirement merely "channels how Barton may present his grievances," and so is administrative rather than injunctive. Op. 3. But

channeling presupposes an open channel. If the district court grants leave, the grievance proceeds; if it denies leave, the grievance is barred outright and forever. An order under which a citizen may petition a state disciplinary body only with the prior permission of the federal court whose appointee is the target is not a routing rule—it is an injunction against petitioning, enforced by the contempt power. The label "case management" cannot convert a prior restraint into a ministerial measure.

Nor was the requirement a neutral measure adopted in the ordinary course of estate administration. It was entered in direct response to Mr. Barton's having filed a grievance: the Receiver moved to restrain further grievances, and the court answered by requiring advance leave before any future grievance. A restriction imposed because a litigant exercised the right to petition, and operating to bar future exercise of that same right on pain of contempt, is the antithesis of administrative housekeeping. It is a prospective, standing restraint on protected petitioning—precisely the kind of order that § 1292(a)(1) makes reviewable.

Nor does the availability of a leave application render the restraint merely temporary or administrative. The "leave" the order contemplates must be sought from—and granted by—the same court that appointed the receiver and superintends receiver's work. A requirement that a citizen obtain the permission of the target's appointing court before petitioning an independent disciplinary authority is not a scheduling convenience; it is a standing condition on the exercise of a constitutional

right, enforced by the contempt power, that persists for the life of the receivership. Its provisional label diminishes neither its present operation nor its appealability.

The immediate appealability of pre-filing restraints on protected petitioning is, moreover, a question on which the courts of appeals have not spoken with one voice, and its intersection with the First Amendment makes en banc clarification valuable. The full Court's guidance is needed so that district courts supervising the many receiverships in this Circuit understand the constitutional limits on conditioning access to disciplinary and judicial fora—and so that litigants are not forced to disobey an order and risk contempt as the price of obtaining review of a restraint on a constitutional right.

## CONCLUSION

The Court should grant rehearing en banc, vacate the dismissal, and hold that the order modifying the receivership to require advance judicial leave before filing a state-bar grievance is reviewable under 28 U.S.C. § 1292(a)(1). Because the order works a prior restraint on a constitutional right, the predicate for the panel's show-cause inquiry under Federal Rule of Appellate Procedure 38—that the appeal was patently without merit—falls away as well. An appeal that turns on a substantial constitutional question—whether a federal court may require its leave before a citizen petitions a separate sovereign's disciplinary authority—and that rests on controlling decisions of this Court and the Supreme Court is not frivolous, and Rule

38 sanctions are unwarranted. A jurisdictional argument supported by Supreme Court precedent cannot reasonably be characterized as frivolous merely because the panel ultimately disagreed. The questions presented recur in every receivership in this Circuit and reach the constitutional limits of the equity power; they warrant the attention of the full Court.

These questions are not Mr. Barton's alone. Whether a federal court may condition access to a State's attorney-discipline system on its own advance leave implicates the institutional authority of the State of Texas and its bar to regulate the lawyers they license, free of federal preconditions—an interest that persists regardless of the merits of any individual grievance. That dimension independently commends these questions to the full Court.

Respectfully submitted,

Dated: July 14, 2026

*/s/ Timothy L. Barton*
Timothy L. Barton
*Pro Se Appellant*
1846 E Rosemeade Pkwy,
#232, Carrollton, TX 75007
(214) 673-8714 |
Timothy.Barton@proton.me

## CERTIFICATE OF SERVICE

I certify that on July 14, 2026, I submitted the foregoing corrected Petition for Rehearing En Banc to the Clerk of the Court by email to Lisa_Ferrara@ca5.uscourts.gov as directed by the Clerk's letter of July 6, 2026, and that the notice of docket activity generated upon filing will serve all counsel of record, including counsel for Plaintiff-Appellee Securities and Exchange Commission (Keefe M. Bernstein and Ezekiel L. Hill).

*/s/ Timothy L. Barton*
Timothy L. Barton, Pro Se

## CERTIFICATE OF COMPLIANCE

1. This petition complies with the type-volume limitation of Fed. R. App. P. 40(d)(3) because, excluding the parts exempted by Fed. R. App. P. 32(f), it contains 3,618 words, which does not exceed 3,900 words.
2. This petition complies with the typeface and type-style requirements of Fed. R. App. P. 32(a)(5)-(6) because it has been prepared in a proportionally spaced typeface using Times New Roman 14-point font.

*/s/ Timothy L. Barton*
Timothy L. Barton, Pro Se

## ATTACHMENT
## COPY OF THE PANEL OPINION

Pursuant to 5th Cir. R. 40.1.1 and 5th Cir. R. 40.2.2.10, a copy of the panel's opinion is attached hereto.

# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit
**FILED**
May 18, 2026
Lyle W. Cayce
Clerk

No. 25-10871
Summary Calendar

SECURITIES AND EXCHANGE COMMISSION,

*Plaintiff—Appellee*,

*versus*

TIMOTHY BARTON,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:22-CV-2118

Before RICHMAN, SOUTHWICK, and WILLETT, *Circuit Judges*.

PER CURIAM:*

Timothy Barton, proceeding pro se, appeals a midstream administrative order entered in an ongoing receivership. This is one of many appeals Barton has filed concerning this receivership. Because Barton has not established appellate jurisdiction, we DISMISS his interlocutory appeal and do not reach the merits. And given both the obvious jurisdictional defect and

* This opinion is not designated for publication. *See* 5TH CIR. R. 47.5.

Case: 25-10871 Document: 118-1 Page: 4 Date Filed: 07/02/2026



Barton's repeated receivership-related appeals, we DIRECT Barton to SHOW CAUSE why sanctions should not be imposed.

## I. JURISDICTION

Federal appellate jurisdiction generally extends only to "final decisions" of a district court. 28 U.S.C. § 1291. Final decisions are those that "end the litigation on the merits and leave nothing for the court to do but execute the judgment." *Netsphere, Inc. v. Barton*, 799 F.3d 327, 331 (5th Cir. 2015) (cleaned up). There are, however, exceptions to the final-judgment rule, two of which are relevant here. The first exception covers orders "granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions. 28 U.S.C. § 1292(a)(1). The second covers "orders appointing receivers, or refusing to wind up receiverships, or to take steps to accomplish the purposes thereof, such as directing sales or other disposals of property." *Id.* § 1292(a)(2).

We first consider whether § 1291 allows us to reach the merits of Barton's appeal. It does not. Barton contends that the modified receivership order is a "final decision." But the order he challenges did not end the litigation. *See Netsphere*, 799 F.3d at 331. Nor did it leave only execution of the judgment. *Id.* Rather, the district court merely modified the existing receivership order to require that Barton pre-clear grievances and complaints. That is an administrative measure designed to prevent both interference with the receivership and harassment of the receiver. Because the "underlying . . . dispute that formed the original basis for th[e] litigation remains undecided," there is no final decision that confers jurisdiction under § 1291. *Id.*

Barton next argues that § 1292(a)(1) supplies jurisdiction because the district court's pre-clearance requirement operates as a "freestanding injunction" that restrains his conduct. But an administrative measure

governing court supervision of the receivership and the conduct of the proceedings before it is not an injunction within the meaning of § 1292(a)(1). The pre-clearance requirement is a case-management tool that channels how Barton may present his grievances while the receivership remains in place—not an equitable decree altering substantive rights. Indeed, Congress's creation of a specific exception to the final-judgment rule in § 1292(a)(2) for receivership-related orders "indicates that such orders are distinct from the injunctions covered by [§ 1292(a)(1)]." *Warren v. Bergeron*, 831 F.2d 101, 103 (5th Cir. 1987).[1]

Even if the pre-clearance requirement carried the practical effect of an injunction, interlocutory review would still be unavailable. The Supreme Court has made clear that an order must have a "serious, perhaps irreparable, consequence" and be "effectually challenged" only on immediate appeal to trigger § 1292(a)(1). *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 83–84 (1981) (citation omitted); *see also United States v. Garner*, 749 F.2d 281, 286 (5th Cir. 1985) (same). Barton has made no such showing. Because he identifies no irreparable consequence requiring immediate review, § 1292(a)(1) does not confer jurisdiction.

Nor does the receivership-specific exception in § 1292(a)(2) allow for interlocutory review.[2] The modified receivership order merely added the

---

[1] *See SEC v. Complete Bus. Sols. Grp., Inc.*, 44 F.4th 1326, 1333 (11th Cir. 2022) ("We can't skip over the more specific § 1292(a)(2), which expressly addresses receivership-related orders, to find jurisdiction under the more general § 1292(a)(1), which involves injunction-related orders of all stripes."); *In re Saffady*, 524 F.3d 799, 804 (6th Cir. 2008) ("By distinguishing between injunctions in § 1292(a)(1) and receiverships in § 1292(a)(2), Congress expressed its desire to treat orders relevant to receiverships differently than orders relevant to injunctions.").

[2] Barton did not assert this jurisdictional basis in his opening brief. Although "there is no need to explore jurisdictional bases the appellant does not address," *SCF Waxler*

pre-clearance requirement to protect the receivership and the receiver. It did not appoint a receiver or refuse to wind up the receivership. Nor did it involve the sale of receivership property. We recently emphasized the narrowness of § 1292(a)(2) in a different appeal filed by Barton. *See SEC v. Barton*, 170 F.4th 938, 943–44 (5th Cir. 2026) (finding no interlocutory jurisdiction under § 1292(a)(2) for "non-sale administrative orders related to the receivership"). Because the challenged order falls outside § 1292(a)(2)'s narrow grant of interlocutory review, we lack jurisdiction under § 1292(a)(2).

In sum, Barton challenges a midstream administrative ruling entered in the course of the district court's supervision of the receivership. Such an order is nonfinal and falls outside the relevant categories of interlocutory appellate review. Because Barton has not established any basis for our jurisdiction, we DISMISS his appeal.

## II. SHOW CAUSE

We recently warned Barton that "[f]urther appeals from sale orders or non-sale administrative orders will be viewed with skepticism and will incur sanctions if deemed frivolous." *See Barton*, 170 F.4th at 946 n.8. True, this appeal was filed before that warning issued. But Barton did not withdraw it afterward. Nor is this appeal an isolated misstep. By our count, Barton has filed thirteen receivership-related appeals in the past three years. Against that backdrop, and given the settled limits on interlocutory review of non-sale receivership-administration orders, Barton must show cause why this appeal should not be deemed frivolous and why sanctions should not issue. *See Howard v. St. Germain*, 599 F.3d 455, 458 (5th Cir. 2010) ("An appeal is frivolous if the result is obvious or the arguments of error are wholly without

---

*Marine, L.L.C. v. ARIS T M/V*, 902 F.3d 461, 464 (5th Cir. 2018), *as revised* (Oct. 30, 2018) (cleaned up), Barton addresses § 1292(a)(2) in his reply.

Case: 25-10871 Document: 111 Page: 5 Date Filed: 05/12/2026



merit." (citation omitted)); Fed. R. App. P. 38 ("If a court of appeals determines that an appeal is frivolous, it may, after . . . notice from the court and reasonable opportunity to respond, award just damages and single or double costs to the appellee.").

Under Federal Rule of Appellate Procedure 38 and our inherent authority, Barton is DIRECTED to SHOW CAUSE by letter on or before May 29, 2026 why sanctions should not be imposed. His response should address, among any other points he wishes to raise, whether this appeal is frivolous in light of the jurisdictional defects identified above, his repeated receivership-related appeals, and this court's prior warning that such appeals "have impacted the management of the receivership estate, significantly reduced funds potentially available to ultimate beneficiaries of the receivership, and expended court resources," *Barton*, 170 F.4th at 946 n.8.

* * *

Accordingly, we DISMISS Barton's appeal for lack of jurisdiction and DIRECT Barton to SHOW CAUSE why sanctions should not be imposed.